Gilbert H. King, J.
Defendant’s petition for a hearing on a writ of error coram nobis was granted by Special Term and, in pursuance of the order of Special Term this court conducted a full and complete inquiry into the allegations of defendant’s petition.
Defendant seeks to set aside a judgment of the Supreme Court, Erie County, rendered April 23, 1942, convicting defendant, on his plea of guilty, of the crime of murder in the second degree.
Defendant, together with one Thomas Carney, was indicted for the crime of murder in the first degree. Trial of the indictment commenced on April 13, 1942 and on April 23, 1942, apparently at the close of the People’s case, the indictment of Carney was dismissed because of the failure of proof, whereupon defendant Buckley, after consultations between the District Attorney and his assigned counsel, withdrew his plea of not guilty and with the permission of the court entered a plea of guilty to murder in the second degree, for which he was originally sentenced to a term of 25 years. Shortly thereafter he was resentenced to a term of not less than 20 years nor more than his natural life. From this judgment of conviction no appeal was taken.
*405 Thereafter defendant made applications to the County, Supreme and Federal Courts as follows:
1. In October, 1944 defendant sought to set aside and vacate the judgment of conviction and for the dismissal of the indictment alleging that his confessions were coerced and that the coerced confessions led him to plead guilty. Mr. Justice Raymond C. Vaughan in a memorandum decision dated December 19, 1944 and by order entered December 27, 1944 denied the application. An appeal from this order of denial was dismissed by the Appellate Division, Fourth Department. (People v. Buckley, 270 App. Div. 872.) Permission to appeal to the Court of Appeals was denied. Certiorari was denied June 3, 1946.
2. In July, 1957 defendant petitioned the Wyoming County Court for a writ of habeas corpus which petition was denied by the Honorable John S. Conable in a memorandum decision dated July 8, 1957 and order entered July 18, 1957 on the ground that a writ of habeas corpus was not a proper method for a determination of the defendant’s claim of the involuntariness of the confessions.
3. In April, 1961, defendant made an application to the Supreme Court, Erie County, for a writ of error coram nobis seeking to be resentenced claiming that his resentence by Justice Hinkley on May 15, 1942, was as a third felony offender. In a memorandum decision dated June 5, 1961 upon which an order was entered June 8, 1961, Justice Robert E. Noonan denied the application without a hearing and dismissed the petition, making reference to the opinion of Mr. Justice Hinkley explaining the reason and basis for the resentencing (People v. Buckley, 178 Misc. 545).
4. Thereafter defendant petitioned the United States District Court for the Western District of New York for a writ of habeas corpus alleging that the confessions had been coerced and that his counsel on the trial had misrepresented facts to him causing him to enter the guilty plea. In a memorandum decision and order dated December 5, 1961, the Honorable Harold P. Burke denied the applications for a writ of habeas corpus and denied a certificate of probable cause for appeal.
5. Defendant applied directly to the Court of Appeals for the Second Circuit for permission to appeal in forma pauperis and for a certificate of probable cause. This application was denied on June 15, 1962 on the grounds that under the New York Code of Criminal Procedure, the defendant could then seek a writ of error coram nobis in the courts of this State.
Defendant in the present proceeding seeks to have the conviction set aside and a new trial granted on the grounds that *406 (1) the confessions were coerced and were taken during a period of illegal detention by the police; (2) his plea of guilty was based on the coerced confessions; (3) he was not allowed to be represented by the attorney of his choice on the trial; (4) the results of a paraffin or nitrate test were never offered in evidence; (5) the trial court agreed to make an erroneous sentence and later to resentence him to a substantially reduced term; (6) the denial by the police of his right to consult with his attorney was a denial of his constitutional rights.
People v. Nicholson (11 N Y 2d 1067) disposes of defendant’s first and second contentions. In a Per Curiam opinion the Court of Appeals said (p. 1068): “ The issue as to whether the confession was illegally obtained is waived by the guilty plea.” (See, also, People v. Fish, 11 N Y 2d 1069; People v. Jones, 11 N Y 2d 1070.)
The facts do not support defendant’s third contention. The defendant’s wife and Gordon Gannon, the attorney she retained, both testified that the attorney’s employment was for the City Court hearing and that defendant’s lack of funds led defendant to apply to the court for assigned counsel for the purpose of trial. Two able and distinguished counsel were assigned and represented defendant up to the time of sentence (see order of Honorable Hamilton Ward dated March 20, 1942).
The proof on the hearing was that a paraffin or nitrate test was made on defendant’s hands, apparently to determine the presence or absence of gunpowder. The result of the test was negative. Former Detective Chief Thomas Meegan could not remember whether or not there was any testimony on this point at the trial. It was Mr. Gannon’s recollection (he being present at the trial as assigned counsel for Carney) that there was no testimony on this point at the trial. No proof was offered that the District Attorney knew of the test. He cannot be charged with the suppression of evidence unless it is established that he knew of the existence of the evidence. Even assuming that he knew of this essentially negative evidence and that his failure to offer it at the trial violated the rule that “It is the duty of a prosecutor to present to the trial jury all the material evidence of which he may become possessed ” (People v. Riley, 191 Misc. 888, 892), defendant has not borne the burden of proving that the failure of the District Attorney to present the evidence of the test induced or coerced his plea of guilty. Defendant’s fourth contention has no merit as a basis for the application before this court.
*407 The defendant’s fifth contention that the trial court agreed to make an improper sentence after the plea of guilty and to correct and substantially reduce it to a proper and less onerous sentence and that such agreement was part of the consideration for defendant’s plea to the reduced charge does not square with the facts. It is, rather, a postconviction statement of facts by the defendant which he attempts to establish as truth based upon the resentencing procedure followed in this case. The Honorable Alonzo G. Hinkley who presided at the murder trial and who made the original sentence and resentence wrote an opinion setting forth the reasons for the resentencing (People v. Buckley, 178 Misc. 545, supra) and significantly in the same opinion also resentenced one Roman Marchinkowski (originally sentenced Oct. 4, 1935), a defendant not in any way connected or associated with the defendant Buckley or the crime in question, to a term of 20 years to life. It is also significant that defendant did not raise the issue of any “deal” insofar as the sentence was concerned in his application for a writ of error coram nobis attacking the propriety of the sentence decided by Justice Noonan in April, 1961.
The proof on the hearing established that, for a period of approximately five days defendant was held by the police on an “ open charge ” and that during that period repeated attempts by the attorney retained by defendant’s wife and mother to see and consult with the defendant were rebuffed by the police. Former Detective Chief Meegan testified to the attorney’s appearance at Police Headquarters and advising the attorney that the defendant was being held ‘ ‘ incommunicado. ’ ’ The attorney’s office records made at the time were produced on the hearing and supported the claimed facts. It was during this five-day period that five statements, three signed and two unsigned, were taken from the defendant by the District Attorney and the police.
The admissibility of these statements or confessions was, according to the affidavits of assigned counsel (both of whom are now dead), vigorously contested by them and received by the trial court over the exception and objection of counsel, the trial court having ruled that the question of whether the confessions were voluntary or coerced was a question of fact for the jury to decide. On this and all the other evidentiary questions on the trial, we have only the memory of the witnesses for the record of the trial was not preserved apparently because no appeal was taken from the judgment of conviction. People v. Nicholson (supra) makes it clear that defendant’s right to challenge the admissibility of the statements or their effect *408 on his course of action in pleading guilty to a lesser charge was erased by his voluntary plea of guilty. This assumes of course that defendant was adequately represented and advised by competent counsel at the time he made the plea. The assigned counsel were able and experienced attorneys. In defendant’s prior attacks upon the judgment of conviction affidavits of the assigned counsel were part of the papers before the court and are part of the record here. In the affidavits the -attorneys denied that they made “ false and fraudulent misrepresentations to the defendant or induced or coerced him into making the plea of guilty.” No other proof except defendant’s own statement was offered on the hearing before me to support his contention in this respect. Defendant made the identical contention to, and it was rejected by, Judge Vaughan and Judge Burke in 1944 and 1961 respectively. In People v. Berger (9 N Y 2d 692) in which a somewhat similar issue of abandonment by counsel was raised, it was decided that the denial of a hearing was error. Defendant has had his full opportunity to present his proof on this question and this factual question is resolved against him.
There is no doubt that for five days defendant not only did not have but was denied the benefit of counsel and that during that time the confessions were obtained from him. The confessions undoubtedly fall within the ambit of People v. Nicholson (supra) and People v. Howard (12 N Y 2d 65) and on that basis a denial of a hearing would have been proper. The attack here, however, is also on the denial of the right to have counsel and on this issue, in the court’s opinion, the defendant was entitled to this hearing. On none of the defendant’s previous efforts to upset the conviction was a hearing held.
As Judge Fuld wrote in People v. Howard (supra p. 66), there is “ an unmistakable social value in putting an end to litigation at some point”. It is hoped that this hearing has served to establish, once and for all, whether or not defendant’s contentions as to the facts, were true or were like so many coram nobis proceedings based on claims of facts retrospectively tailored to fit a pattern of alleged errors of commission and omission by the enforcement, prosecution and judicial authorities made difficult or impossible of refutation by the passage of time, fading memories, lost, mislaid or destroyed records and exhibits and the inexorable hand of death. Most of defendant’s claims fall in this category. One does not and that is the denial of counsel for the first five days of detention. On this point there is no factual dispute.
*409 The delineation in this opinion in detail of the steps taken and the opportunities heretofore afforded the defendant, together with this hearing, indicate beyond argument that the courts have fulfilled the “unmistakable social burden in affording unending corrective process for any defect.” (People v. Howard, supra, p. 66.)
The proof in this case was that there were no eyewitnesses who placed defendant at the scene of the crime, no gun was found and apparently no link to the defendant except the confessions taken at a time when he did not have the advantage of advice from his attorney. Absent the confessions, the case against him was apparently no stronger than that against his codefendant Carney, against whom the indictment was dismissed on trial. As Mr. Justice Williams wrote in the dissenting opinion in People v. Rogers (20 A D 2d 955-956): “ The probabilities are that if he had received the advice from a lawyer when requested he would not have signed a confession. Without the confession he might not have been indicted * * *
further, even if there were a validly procured indictment, without the confession he might not have been advised by his assigned attorney to plead guilty even to the reduced charge had he and the attorney not known that they would be confronted with the alleged confession at the time of trial. * * * So it seems that he may have been deprived of the valued right of counsel at a very important preliminary stage of the proceeding against him. In short, all of his problems stem from his deprivation of his right to counsel ” (emphasis supplied).
I hold that the defendant was deprived of his constitutional right to be represented by and consult with counsel from the time of his detention on March 2, 1942 until March 7, 1942, a period of five days and that by reason thereof his conviction was illegal.
The motion to vacate and set aside the conviction made and entered on the 23rd day of April, 1942 is granted and a new trial ordered.